NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOSIES WALKER,<br><br>                      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                      Defendant. | Civil Action No. 2:12-CV-07042-SDW<br><br><br><br>**OPINION**<br><br><br>November 4, 2013 |

**WIGENTON,** District Judge**.**

Before the Court is plaintiff Mosies Walker's ("Mosies" or "Plaintiff") appeal of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner"), with respect to Administrative Law Judge Richard West's ("ALJ West") denial of Plaintiff's claim for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383(c).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Venue is proper pursuant to 28 U.S.C. § 1391(b).

For the reasons set forth below, the Court **AFFIRMS** the ALJ's decision.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on July 16, 1966 and is forty-seven years old. (R. 30.) Plaintiff has a girlfriend, with whom he lives. (R. 153.) Plaintiff completed high school and was a B student during that period. (R. 30.)

Plaintiff has worked mostly at warehouses. (R. 31.) In this capacity, Plaintiff's tasks consisted mostly of working with forklifts, shipping and receiving, and regularly lifting items that weighed between forty to fifty pounds. (R. 31-32.) Plaintiff earned wages between the periods of 1990 to 2008, except for 1998.[1] (R. 136-140.)

In 1997, Plaintiff was involved in a car accident where his van slid down and hit a guard shack and he consequently hit his head and fell unconscious. (R. 35.) As a result, Plaintiff experienced headaches as well as trouble with his back, vision, and memory. (*Id.*) Plaintiff stopped working in 1998 and gradually returned in 1999 and worked until 2005, but the headaches persisted. (R. 36, 138-139.)

In 2005, Plaintiff's parents passed away. (R. 36.) As a result, he became frustrated, depressed, distressed, and his headaches worsened. (R. 36-37.) Plaintiff claims that the conditions caused him to stop working. (R. 36.)

In 2006, Plaintiff returned to the workforce and worked until 2008, albeit at a reduced capacity. (R. 139-140.) In November 2008, Plaintiff permanently dropped out of the workforce because of alleged disability. (R. 34.)

No longer employed, Plaintiff spends his time in his apartment listening to music. (R. 46.) He is able to perform minor tasks throughout the apartment, such as sweeping; however, Plaintiff

---

[1] Plaintiff's income throughout this period was subject to substantial fluctuations. Notably, between the years of 2007 to 2008, where the Plaintiff alleges his condition worsened, his earnings were significantly lower than previous years. (*See* R. 36, 136-140.)

does not cook because the flames cause him to experience headaches. (*Id.*) Plaintiff claims that he has not driven a car since the accident in 1997. (*Id.*)

　I.　Medical History

On September 24, 2009, Plaintiff visited the Newark Community Health Center (the "NCHC") in Newark, New Jersey because of his headaches and migraines. (R. 225.) Additionally, Plaintiff complained of "chest pain, syncope, sleep apnea, blurry vision, nose bleeding, back pain, nocturia, depression, dizziness, [and] muscle weakness." (*Id.*) The NCHC prescribed Plaintiff medicine for his headaches. (*Id.*)

On November 1, 2009, Plaintiff completed a Function Report for the Social Security Administration that detailed the extent of his condition. (R. 153-60.) Plaintiff stated that he did a lot of resting because of the headaches, but was sometimes able to go to a store nearby in order to purchase the newspaper. (R. 153.) He also reported that the headaches affected his ability to stand for extended periods of time and to sleep well. (R. 154.) Plaintiff also reported that his ability to concentrate and to follow oral instructions had declined. (R. 158.)

On December 9, 2009, Dr. Kim Arrington ("Dr. Arrington") performed a psychiatric evaluation on Plaintiff. (R. 204-07.) As part of the evaluation, Dr. Arrington performed a mental status examination that showed that Plaintiff's demeanor and responsiveness to questions were cooperative and his relating, social skills, and overall presentation were considered adequate. (R. 205.)

Dr. Harrington also assessed Plaintiff's speech. (*Id.*) He found Plaintiff's speech intelligible and fluent; and the quality of Plaintiff's voice was clear and his expressive and receptive language were adequate. (*Id.*)

Further, Dr. Harrington examined Plaintiff's thought processes, attention, and concentration. (*Id.*) Dr. Harrington observed that Plaintiff's "thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting." (*Id.*) Nevertheless, Dr. Harrington described Plaintiff's mood as "dysthymic," and noted that Plaintiff's attention and concentration were mildly impaired and this possibly stemmed from depression. (*Id.*) Dr. Harrington also found that Plaintiff's depression might have affected his recent and remote memory skills. (R. 206.)

Finally, Dr. Harrington provided a medical source statement in which he found Plaintiff able to follow and understand simple directions and instructions and independently perform many simple tasks. (*Id.*) Nevertheless, Dr. Harrington noted that Plaintiff would have difficulties learning new tasks and performing complex tasks independently. (*Id.*) Dr. Harrington stated that these difficulties may be attributable to Plaintiff's depression and cognitive symptomatology. (*Id.*) Dr. Harrington recommended that Plaintiff see a neurologist for his headaches and a psychiatrist for his depressive symptoms. (R. 207.)

On December 10, 2009, Dr. Rambhai C. Patel ("Dr. Patel") reported a system review and clinical diagnoses for the State of New Jersey's Division of Disability Determination Services ("DDS"). (R. 198-200.) The system review found that Plaintiff suffered from headaches without any dizziness and was able to see without glasses. (R. 199.) The clinical diagnoses found that Plaintiff had contusions on the left and right shoulders and also suffered from back pain. (*Id.*) The clinical diagnoses showed a history of chronic headaches of unknown etiology. (*Id.*) Dr. Patel's report also stated that Plaintiff was taking Motrin 800 mg to mitigate the headaches' effects and was taking other pain medication for his shoulders and lower back pain. (R. 198.)

On December 14, 2009, Dr. Jose Rabelo ("Dr. Rabelo") completed the medical portion of Plaintiff's disability determination by DDS and found that Plaintiff suffered from chronic headaches since 2005. (R. 197.) Additionally, Dr. Rabelo noted that Plaintiff suffered from neck and shoulder pain that worsened when he lifted items weighing over thirty-five pounds. (*Id.*) Also, like Dr. Patel, Dr. Rabelo found that Plaintiff had a contusion on the left and right shoulders and lower back pain as a result of the 1997 car accident. (R. 197, 199.)

On January 12, 2010, Dr. Thomas Yared ("Dr. Yared") performed a psychiatric review on Plaintiff in order to make an evaluation as to whether Plaintiff was disabled. (R. 209-22.) Dr. Yared found that Plaintiff needed a Residual Function Capacity ("RFC") assessment in order to find whether Plaintiff had a medically determinable impairment ("MDI"). (R. 209.) He based this medical disposition on the affective disorders that Plaintiff suffered. (*Id.*) Specifically, Dr. Yared found that Plaintiff suffered from a disturbance of mood that was accompanied by a full or partial manic or depressive syndrome, evidenced by Plaintiff's sleep disturbance, decreased levels of energy, and his difficulty concentrating or thinking. (R. 211.) Notwithstanding, Dr. Yared determined that the overall medical evidence was "an MDI with a lack of support for persistence or marked limitations." (R. 222.) However, Dr. Yared noted that Plaintiff had "moderate limitation in the various areas of functioning, CPP, adaption, social functioning, and understanding and memory." (*Id.*)

On January 30, 2011, Plaintiff's last doctor, Dr. William Lagardia ("Dr. Lagardia"), from NCHC had a series of three Magnetic Resonance Imaging ("MRI") scans performed on Plaintiff in order to report on his lumbar spine, brain, and carotids. (*R*. 44-45, 243, 245-47.) The first MRI report showed findings of disc dehydration and bulging at L4-L5 and L5-S1, with a small annular tear in the mid posterior portion at both levels. (R. 243.) Another MRI report of an

ultrasound of Plaintiff's carotids and his impressions found no hemodynamically significant stenosis. (R. 245.)

II. Procedural History

On August 11, 2009,[2] Plaintiff filed a Title II application for a period of disability and disability insurance benefits and filed a Title XVI application for supplemental security income. (R. 12.) Plaintiff alleged disability beginning on November 1, 2008 in each application. (*Id.*) On January 14, 2010, the applications were initially denied because Plaintiff could not establish an affective mood disorder. (R. 12, 61-62.) On May 14, 2010, both applications were denied on reconsideration for the same reason. (R. 12, 63-64.)

On May 20, 2010, Plaintiff requested a hearing before an Administrative Law Judge to review the applications *de novo*. (R. 12, 79.) On May 10, 2011, a hearing was held before ALJ West. (R. 12.) Plaintiff testified at the hearing, as did vocational expert, Patricia Shoshone (the "VE") at ALJ's West request. (R. 26-60.) ALJ West asked the VE four hypothetical questions in order to assess whether there existed jobs in the national economy that Plaintiff was capable of performing. (R. 48-50.) Each hypothetical took Plaintiff's age and education into consideration. (R. 48.)

On June 15, 2011, ALJ West issued a decision concluding that Plaintiff had not been under disability on the ground that Plaintiff's RFC was compatible with other work at step five ("ALJ's Decision"). (R. 19.) Specifically, ALJ West concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) As support for his conclusion, ALJ West cited his assessment that Plaintiff had the RFC to

---

[2] Plaintiff's brief states the filing date was October 13, 2009. (Pl.'s Br. 1.) However, both the ALJ's findings and the Administrative Record reflect that August 11, 2009 is the filing date.

perform sedentary work and the VE's testimony conclusion that Plaintiff was able to work in alternative occupations. (R. 19, 50.)

On July 1, 2011, Plaintiff requested that the Appeals Council review the ALJ's Decision. (R. 7.) On September 11, 2012, the Appeals Council denied Plaintiff's request and the ALJ's Decision became final. (R. 1, 5.)

On November 13, 2012, Plaintiff filed a Complaint with this Court. (*See generally* Compl.)

**STANDARD OF REVIEW**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). The court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D.Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

An individual will be considered disabled under the Social Security Act (the "Act") if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A) (2006). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A) (2006). A

claimant must show that the "medical signs and findings" related to her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A) (2006).

In order to establish a prima facie case of disability under the Act, a plaintiff bears the burden of demonstrating: (1) that she was unable to engage in SGA by reason of physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. *See* 42 U.S.C. § 423(d)(1)(A), (3) (2006).

In determining disability, the SSA utilizes a five-step sequential analysis. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Cruz*, 244 F. App'x. at 480. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii), (iv-v). A determination of disability at steps three and five results in a finding of disability. *See* 20 C.F.R. § 416.920(a)(4)(iii), (v). Contrarily, if an affirmative answer is determined at steps one, two, or four the SSA proceeds to the next step in the analysis. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii), (iv).

At step one, the Commissioner must determine whether the claimant is engaging in SGA. *See* 20 C.F.R. § 416.920(b). SGA is defined as work activity that is both substantial and gainful. *See* 20 C.F.R. § 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for profit, whether or not profit is realized. *See* 20 C.F.R. §

416.972(b). If an individual engages in SGA, he is not disabled regardless of the severity of his physical or mental impairments. *See* 20 C.F.R. § 416.920(b). If the individual is not engaging in SGA, the Commissioner proceeds to the next step. *See* 20 C.F.R. § 416.920(a)(4).

At step two, the Commissioner must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 416.921(a). If the claimant does not have a severe impairment or severe combination of impairments, he is not disabled. *See* 20 C.F.R. § 416.920(c). If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step. *See* 20 C.F.R. § 416.920(a)(4)(ii).

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed "in appendix 1 to subpart P of part 404 of" 20 C.F.R. §§ 400-99. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. *See* 20 C.F.R. 416.920(d). If the claimant does not, the analysis proceeds to the next step. *See id.*

After step three, but before considering step four, the Commissioner must first determine the claimant's RFC. *See* 20 C.F.R. § 416.920(e); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). An individual's RFC is his ability to do physical and mental work activities on a

sustained basis despite limitations from his impairments. *See* 20 C.F.R. § 404.1545. In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. § 416.920(e), 416.945.

At step four, the Commissioner must determine whether the claimant has the RFC to perform the requirements of his past relevant work. *See* 20 C.F.R. 416.920(f). "Past relevant work" means work performed within the fifteen years prior to the date that disability must be established. *See id*. If the claimant has the RFC to perform his past relevant work, the claimant is not disabled. *See id*. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth step. *See id.*

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 416.920(g).

The claimant bears the burden of persuasion in the first four steps. *See Malloy v. Comm'r of Soc. Sec*., 306 F. App'x. 761, 763 (3d Cir. 2009). If the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy. *See* 20 C.F.R. § 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

Here, on appeal, Plaintiff argues that substantial evidence in the administrative record established entitlement to and eligibility for the benefits. As a result, Plaintiff requests that this Court reverse the ALJ's Decision. (Pl.'s Br. 8.) Alternatively, Plaintiff argues that the ALJ's Decision was not based on the substantial evidence of record and therefore, requests this Court to remand the decision and order a new hearing. (Pl.'s Br. 8.) The Commissioner, however, argues

11

that: (1) ALJ West's finding was based on substantial evidence in the record (Def.'s Br. 2), and (2) that ALJ West properly considered all the evidence in the record in evaluating Plaintiff's RFC. (R. 16-18, Pl.'s Br. 6.)

The five-step analysis is discussed below.

i. Step One

SGA is work that involves significant physical or mental activities and that is done for pay or profit. *See* 20 C.F.R. § 416.972(a)-(b). If a claimant is found to be engaged in SGA, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Here, ALJ West found that Plaintiff met the insured status requirement of the SSA through September 30, 2009 and Plaintiff has not engaged in SGA since November 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.) (R. 14.)

ii. Step Two

At step two, the ALJ must consider all symptoms and the extent to which these symptoms can reasonably be accepted with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929. Under the applicable regulations, an impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," such as:

> physical abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). A "severe" impairment is distinguishable from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience. *See Bowen*, 482 U.S. at 154 n.12.

In this instance, ALJ West found that Plaintiff had the following severe impairments: headaches, adjustment disorder with depression and status-post motor vehicle accident with contusions of shoulders and lower back pain (20 CFR 404.1520(c) and 416.920(c)). (R. 14.)

iii. Step Three

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x. 376, 379 (3d Cir. 2004). This is an "argument which is entirely dependent upon the merits of [Plaintiff's] argument that the ALJ erred at [s]tep [t]wo." *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x. 140, 145 (3d Cir. 2007). When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." *Knepp*, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (*citing Burnett*, 220 F.3d at 119-20). However, "*Burnett* 'does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'" *Padilla v. Comm'r of Soc. Sec.*, No. 09-2897, 2010 WL 2346650 at *5 (D.N.J. June 9, 2010) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Here, ALJ West found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. 14.)

In coming to this conclusion, ALJ West considered "paragraph B" criteria, under which at least two of the following must be satisfied: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation lasting for an extended period. (R. 15.) ALJ West made findings that Plaintiff has mild restrictions in day-to-day activities, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and Plaintiff never experienced episodes of decompensation of extended duration. (*Id.*) Plaintiff's mental impairment does not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. (*Id.*) As a result, the "paragraph B" criteria are not satisfied. (*Id.*)

If a claimant's impairment does not meet or equal a listed impairment, the ALJ must determine plaintiff's RFC before proceeding to the fourth step of the analysis. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC will then be used in the fourth step to determine whether the plaintiff can perform the requirements of his past relevant work. *See id*. *See* 20 C.F.R. § 404.1520(f). If the ALJ finds that plaintiff can still do the kind of work plaintiff previously engaged in, plaintiff is not disabled. *Id*.

iv. Step Four

ALJ West found that Plaintiff "has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is limited to understanding, remembering and carrying out simple instructions; having occasional changes in essential job functions and occasional exercise of independent decision making." (R. 16.) ALJ West found that although Plaintiff had complained of headaches, etiology is uncertain and the carotid ultrasound results along with a brain MRI scan showed no significant abnormalities. (R. 17.) Regarding Plaintiff's

complaints of back pain, the lumbosacral MRI scan showed disc bulging at the L4-5 and L5-S1 levels but there was no evidence of cord impingement or compression and no evidence of radiculopathy. (*Id.*) As to Plaintiff's depression, he did not receive any mental health care and there is no evidence of any psychosis. (*Id.*) Additionally, Plaintiff continued to work until the year of 2008, despite his impairments and the medical care and medication he received was not at a level one would expect for such debilitating impairments. (*Id.*)

ALJ West accorded great weight to consultative psychologist, Dr. Arrington who reported that Plaintiff can follow, understand, and perform simple tasks and that he would be able to maintain a regular schedule. (*Id.*) As a result, ALJ West found that the RFC assessment he made was supported by objective and other evidence and took into consideration Plaintiff's complaints. (*Id.*)

ALJ West determined that Plaintiff could not perform his past relevant work, at step four. ALJ West further concluded that Plaintiff is unable to perform any past relevant work because Plaintiff's past relevant work as a warehouse worker entailed heavy lifting and carrying, which exceeds Plaintiff's RFC. (R. 18.)

v. Step Five

As ALJ West determined that Plaintiff could not perform his past relevant work, he then moved on to step five, which required an evaluation of Plaintiff's ability to adjust to other work by "considering [his] [RFC] and . . . vocational factors of age, education, and work experience." 20 C.F.R. § 416.960(c)(1). Additionally, an ALJ must provide evidence demonstrating that plaintiff can perform other work, which exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). If other work exists that the plaintiff can perform, he is not disabled. *Id.*

In the instant matter, ALJ West concluded that a significant number of jobs exist in the national economy that Plaintiff is capable of performing. (R. 18.) Plaintiff was forty-two years old at the time of the alleged disability onset date. (*Id.*) ALJ West determined that Plaintiff is considered a "younger individual age 18-44, on the alleged disability onset date." (*Id.*) Further, ALJ West reported that Plaintiff "has at least a high school education and is able to communicate in English." (*Id.*) Transferability of job skills is not an issue in this case because Plaintiff's past relevant work was unskilled. (*Id.*)

Furthermore, the vocational expert testified that considering Plaintiff's age, education, work experience, and RFC, he "would be able to perform the requirements of representative occupations such as assembler, sedentary, unskilled of which there are 28,000 such jobs in the national economy and 1200 such jobs in the local economy; as table worker, sedentary, unskilled of which there are 13,000 such jobs in the national economy and 500 such jobs in the local economy." (R. 19.)

As a result, based on the testimony of the vocational expert, Medical-Vocational Guidelines 204.00, and the abovementioned factors, ALJ West concluded that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and is therefore not disabled. This Court is satisfied that ALJ West's findings are supported by the substantial credible evidence.

**CONCLUSION**

For the reasons set forth in this Opinion, this Court **AFFIRMS** the ALJ's Decision.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Parties